```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    JACKSON DIVISION


TELTECH SYSTEMS, INC., WONDERLAND
RENTALS, INC AND MEIR COHEN                            PLAINTIFFS


VS.                              CIVIL ACTION NO. 3:10CV679TSL-FKB


HALEY BARBOUR, IN HIS OFFICIAL
CAPACITY AS GOVERNOR OF THE STATE
OF MISSISSIPPI, AND JIM HOOD, IN
HIS OFFICIAL CAPACITY AS ATTORNEY
GENERAL OF THE STATE OF MISSISSIPPI                    DEFENDANTS
```

                    MEMORANDUM OPINION AND ORDER

This cause is before the court on the motions of plaintiffs Teltech Systems, Inc., Wonderland Rentals, Inc. and Meir Cohen for preliminary injunction and for summary judgment, and on the cross-motion of defendants Governor Haley Barbour and Mississippi Attorney General Jim Hood for summary judgment.[1]  Having considered the memoranda of authorities submitted by the parties, the court concludes that defendants' motion should be denied and that plaintiffs' motion should be granted for reasons which follow.

---

[1] Plaintiffs filed their motion for preliminary injunction one day after filing their complaint but did not seek a hearing on the motion.  In that motion, plaintiffs argued for injunctive relief on the basis that Mississippi's Caller ID Anti-Spoofing act is unconstitutional because it violates the Commerce Clause. Plaintiffs subsequently filed their motion for summary judgment on the bases of preemption and violations of the Commerce Clause and First Amendment.  Plaintiffs' summary judgment motion, by which they seek permanent injunctive relief, effectively moots the motion for preliminary injunction.

In June 2010, the Mississippi Legislature passed the "Caller ID Anti-Spoofing Act" which prohibits a person from entering or causing to be entered false information into a telephone caller identification system "with the intent to deceive, defraud or mislead the recipient of a call."  Miss. Code Ann. § 77-3-805. "False information" is defined as "data that misrepresents the identity of the caller to the recipient of a call or to the network itself...."  Id. § 77-3-803.  The Act provides for a fine of up to $1,000 and/or a sentence of up to one year in the county jail.  Id. § 77-3-809.  Plaintiffs herein are commercial entities which provide communications services that include the capability of "spoofing" caller ID and organizations and individuals who use caller ID spoofing for political or personal reasons to maintain their anonymity or to appear to be someone else.[2]  More specifically, Wonderland Rentals, Inc. provides market research, "mystery shopping" and customer service analysis for a wide variety of business clients located in Mississippi and throughout the United States.  It routinely uses caller ID spoofing to provide "mystery shopping" customer interactions with its clients' customer service representatives to gather an unbiased measurement of their performance. TelTech Systems offers the SpoofCard service, which operates like a regular long-distance calling card

---

[2]   The term "spoofing" refers to the practice in which callers use a device to block caller IDs from displaying the caller's correct name and/or phone number.

2

service but also provides each customer the capability to change (or "spoof") the caller ID that is displayed on a called party's telephone.  Plaintiff Meir Cohen is the president of TelTech and uses a SpoofCard to make calls.

In this action, plaintiffs challenge the Mississippi Act on three grounds: (1) that it conflicts with federal law, and specifically the recently-enacted Truth in Caller ID Act of 2009, 47 U.S.C. § 227(e), and thus is preempted; (2) that it violates the Commerce Clause; and (3) that it violates the First Amendment.

<u>Preemption</u>

On December 22, 2010, President Obama signed into law the Truth in Caller ID Act of 2009, which, among other things, amended Section 227 of the Telephone Consumer Protection Act, 47 U.S.C. § 227, by adding the following:

> (e) Prohibition on Provision of Inaccurate Caller Identification Information–
>
>     (1) IN GENERAL– It shall be unlawful for any person within the United States, in connection with any telecommunications service or IP-enabled voice service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value, unless such transmission is exempted pursuant to paragraph (3)(B).

Plaintiffs contend that the federal statute preempts the Mississippi Act since the state Act directly conflicts with the federal statute.

> The Fifth Circuit recently explained as follows:
>
> Preemption can take multiple forms:  Congress can expressly preempt state law in federal statutory language, or it can impliedly preempt state law.  Implied preemption can take the form of field preemption, where federal law "is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation," or "the federal interest [in the field] is so dominant" that it "preclude[s] enforcement of state laws on the same subject."  Implied preemption can also take the form of conflict preemption....

Castro v. Collecto, Inc., 634 F.3d 779, 785 (5th Cir. 2011).

Plaintiffs do not contend that express preemption or field preemption applies in this case, but rather advocate only conflict preemption.  They submit that the Mississippi Act directly conflicts with the federal statute since the federal statute proscribes only caller ID spoofing with "the intent to defraud, cause harm or wrongfully obtain anything of value," whereas the Mississippi Act also prohibits the provision or use of caller ID spoofing with the intent "to deceive" or "mislead."  Plaintiffs argue that since Congress only made it illegal for callers to use caller ID spoofing on interstate calls if their intent was to defraud the recipient of the call and did not make it illegal for callers to use caller ID spoofing on interstate calls if their only intent was to deceive (but not defraud), then the Mississippi Act directly conflicts with the federal law by criminalizing conduct in interstate commerce, i.e., the use of caller ID

4

spoofing with the intent merely to deceive, which Congress intended would remain legal.

Conflict preemption requires that it would be "physically impossible" for a private party to comply with both federal and state law, or that the law "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Empacadora de Carnes de Fresnillo, S.A. de C.V., v. Curry, 476 F.3d 326, 334 (5th Cir. 2007) (citing Planned Parenthood of Houston & Se. Tex. v. Sanchez, 403 F.3d 324, 336 (5th Cir. 2005)); see also Castro v. Collecto, Inc., 634 F.3d 779, 785 (5th Cir. 2011).  In this case, it is apparent that it would not be physically impossible for plaintiffs to comply with both federal and state law:  Complying with the Mississippi Act by not using caller ID spoofing to defraud, deceive or mislead would not violate the federal act.  The federal statute, like the state Act, proscribes the use of caller ID spoofing to defraud.  And while the federal Act, unlike the Mississippi Act, does not proscribe the use of caller ID spoofing to deceive or mislead, the state Act does not conflict with the federal Act merely because it goes further and proscribes more conduct than federal law.  Moreover, plaintiffs have not shown that the state Act stands as an obstacle "to the accomplishment and execution of the full purposes and objectives of Congress."

Commerce Clause

The Constitution's affirmative grant of power to Congress "[t]o regulate Commerce ... among the several States," U.S. Const. art. I, § 8, cl. 3, has long been understood to imply a negative aspect, referred to as the dormant Commerce Clause, which limits the power of the states to regulate commerce. See Piazza's Seafood World, LLC v. Odom, 448 F.3d 744, 749 (5th Cir. 2006) (citations omitted).  The Fifth Circuit has stated that a dormant Commerce Clause analysis begins by asking whether the statute at issue "'(1) facially discriminate[s] against out-of-state economic interests, or (2) regulate[s] evenhandedly and thereby evince[s] only an indirect burden on interstate commerce.'"  Nat'l Solid Waste Mgmt. Ass'n v. Pine Belt Regional Solid Waste Mgmt. Auth., 389 F.3d 491, 497 (5th Cir. 2004) (quoting Dickerson v. Bailey, 336 F.3d 388, 396 (5th Cir. 2003)).  If a state statute facially discriminates against out-of-state economic interests, i.e., has a discriminatory purpose, it is "virtually *per se* invalid."  See id. at 497 (citing Dickerson, 336 F.3d at 396).  "The [statute] will be unconstitutional unless the state actor 'can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest.'" Id. (quoting Dickerson, 336 F.3d at 396).  In contrast, "'evenhanded statutes' that effectuate a legitimate local interest and that only incidentally affect interstate commerce," i.e., which reflect merely a discriminatory

effect, are evaluated under the "Pike balancing test," and will be upheld unless the burden imposed on interstate commerce is "'clearly excessive in relation to the putative local benefits.'" Id. at 597 (quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 90 S. Ct. 844, 847, 25 L. Ed. 2d 174 (1970)).

In addition, the Supreme Court has held that the Commerce Clause prohibits "extraterritorial legislation," so that "a state law that has the 'practical effect' of regulating commerce occurring wholly outside that State's borders is invalid under the Commerce Clause." Healy v. Beer Institute, Inc., 491 U.S. 324, 332, 109 S. Ct. 2491, 2497, 105 L. Ed. 2d 275 (1989).  In Healy, the Court recognized the proposition that "the 'Commerce Clause ... precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State,' Id. at 336, 109 S. Ct. at 2499 (quoting Edgar v. MITE Corp., 457 U.S. 624, 642–643, 102 S. Ct. 2629, 2640–2641, 73 L. Ed. 2d 269 (1982)(plurality opinion)); and further, "a statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature." Id., 109 S. Ct. at 2499.

Plaintiffs herein submit that Mississippi's Caller ID Anti-Spoofing Act violates the dormant Commerce Clause because it has

the practical effect of regulating commerce that occurs wholly outside Mississippi.  In this regard, plaintiffs note that whereas it was once easy to determine where telephone calls began and ended, that is no longer the case.  Due to the tremendous growth of mobile phone usage and the fact that many cell customers have mobile numbers that are associated with an area code other than the one where they live, to the Federal Communication Commission's imposition of mobile number portability (which permits a mobile customer which switches carriers to keep his existing phone number), to the introduction of IP-based services, including voice over internet protocol (VoIP) (which enables the delivery of voice communications over the Internet), and to the growth of call forwarding, it is impossible for a user or provider of caller ID spoofing service to know whether the recipient of their caller ID spoofing is in Mississippi.  Consequently, to ensure they do not risk criminal liability for violating the Mississippi Act, they must refrain from all caller ID spoofing.  Plaintiffs submit that in this manner, the Act has "the 'practical effect' of regulating commerce occurring wholly outside 'that [s]tate's borders." Healy, 491 U.S. at 332, 109 S. Ct. 2491.

This is precisely what the court held in Teltech v. McCollum, Case No. 08-61644-CIV-Martinez-Brown (S.D. Fla. July 16, 2009). There, as here, the plaintiffs (Teltech, Wonderland and Cohen) challenged a nearly identical Florida Caller ID Anti-Spoofing Act

8

based on the extraterritoriality principle.  The court first found as a logical consequence of the undisputed fact that it was impossible for the plaintiffs to determine whether the recipient of their caller ID spoofing was in Florida, that it was impossible for the plaintiffs to conduct their businesses or use caller ID spoofing services anywhere in the country without risk of liability under the Florida statute.  The court thus concluded that the Act had the practical effect of regulating commerce that occurred wholly outside the state of Florida and therefore violated the Commerce Clause.

While defendants herein criticize the Florida court's resort to the extraterritoriality principal, characterizing it as "a fairly unused and nuanced test that has recently become in vogue for challenging state statutes on the Commerce Clause," they acknowledge (albeit only implicitly), that nearly all circuits have recognized and applied this principle.[3]  This is hardly

---

[3]  Defendants note that in In re National Century Financial Enterprises, Inc., Inv. Litigation, 755 F. Supp. 2d 857, 2010 WL 5174585 (S.D. Ohio 2010), the court compiled the growing number of circuits that have "considered this trendy third test" to the Commerce Clause.  There, the court wrote:
> Several circuits refer to "extraterritorial control" as the third part of their dormant Commerce Clause test—economic protectionism and Pike balancing being the first two.  See Selevan v. New York Thruway Auth., 584 F.3d 82, 90 (2d Cir. 2009); Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd., 462 F.3d 249, 261-63 (3d Cir. 2006); Grand River Enterprises Six Nations, Ltd. v. Beebe, 574 F.3d 929, 942 (8th Cir. 2009); KT & G Corp. v. Att'y Gen. of Okla., 535 F.3d 1114, 1143 (10th Cir. 2008).  Other circuits have

surprising, given the Supreme Court's pronouncements in Healy, from which it is clear that the extraterritoriality principle is a viable component of Commerce Clause analysis.

Defendants submit, alternatively, that even if viable in this circuit, the extraterritoriality principle has no potential applicability here since Mississippi's statute applies only in Mississippi and does not attempt to "directly control" commerce

---

expressly recognized the extraterritoriality principle. See, e.g., Midwest Title Loans, Inc. v. Mills, 593 F.3d 660, 665 (7th Cir. 2010) ("But another class of nondiscriminatory local regulations is invalidated without a balancing of local benefit against out-of-state burden, and that is where states actually attempt to regulate activities in other states."); Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc., 492 F.3d 484, 489 (4th Cir. 2007). And the First Circuit, despite calling the extraterritoriality principle the "dormant branch of the dormant Commerce Clause," conceded that the doctrine "remains viable." IMS Health Inc. v. Mills, 616 F.3d 7, 29 n.27 (1st Cir. 2010).

The Sixth Circuit recently adopted the extraterritoriality principle in International Dairy Foods Association v. Boggs, 622 F.3d 628 (6th Cir. 2010). The court followed the other circuits in holding that "a state regulation that controls extraterritorial conduct is per se invalid." 622 F.3d at 645. The key inquiry is whether the regulation would control conduct occurring wholly outside the state's boundaries. Id. at 645–46.

In re Nat'l Century Financial Enters., Inc., 755 F. Supp. 2d at 878–79, 2010 WL 5174585, at 18. The Ninth Circuit has also recognized the extraterritoriality principle. See Pacific Merchant Shipping Ass'n v. Goldstene, 639 F.3d 1154, 1178 (9th Cir. 2011) (observing that "the Commerce Clause prohibits state legislation regulating commerce that takes place wholly outside of the state's borders, regardless of whether the commerce has effects within the state.") (citing Healy and Edgar).

that occurs "wholly outside" the state.  However, under Healy, the inquiry is not whether the statute aims to directly control extraterritorial commerce but whether it has "the 'practical effect' of regulating commerce occurring wholly outside that State's borders."  Healy, 491 U.S. at 332, 109 S. Ct. at 2491.  The Mississippi statute indisputably and inevitably has a significant wholly extraterritorial effect and thus, as the court held in Teltech v. McCollum, violates the Commerce Clause.  On this basis, therefore, the court concludes that plaintiffs' motion for summary judgment should be granted and defendants' motion denied.[4]

---

[4] Plaintiffs submit that even under the Pike balancing test, the Mississippi statute is unconstitutional.  Under the Pike balancing test:
> Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.  If a legitimate local purpose is found, then the question becomes one of degree.  And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

Pike, 397 U.S. at 142, 90 S. Ct. 844.  Plaintiffs contend there is no legitimate local interest which the Act seeks to protect that is not already protected by existing legislation and that the effects on interstate commerce are more than merely incidental.  The only putative local benefit defendants have identified is the prevention, investigation and prosecution of fraud.  Indeed, in their motion and briefs on the pending motions, defendants repeatedly identify as the sole purpose for the Act the prevention, investigation and prosecution of fraud.  Since fraud is already illegal, both under state and federal law, the Act adds nothing toward improving the prevention or investigation of fraud.

For these reasons,[5] it is ordered that plaintiffs' motion for summary judgment is granted and that defendants' motion for summary judgment is denied.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 8th day of December, 2011.

/S/Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

And plaintiffs have shown that there is a more than minimal burden on interstate commerce that cannot be justified.

[5] The court finds it unnecessary to address plaintiffs' First Amendment claim.